**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

**ZENOBIA BROWN**                                                                                      **PLAINTIFF**

**v.**                                              **No. 5:11CV00325 KGB-JTK**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration,**                                                     **DEFENDANT**

**OPINION AND ORDER**

Plaintiff-claimant Zenobia Brown appeals the decision of defendant Commissioner of the Social Security Administration[1] to deny Ms. Brown's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382. Ms. Brown asks this Court to reverse the Commissioner's decision and remand her case to the Social Security Administration ("SSA") for the award of benefits. Both parties have submitted briefs. After considering the record, the arguments of the parties, and the applicable law, this Court affirms the Commissioner's decision.

   **I.   Standard of Judicial Review**

When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th

---

   [1] Carolyn W. Colvin was sworn in as Acting Commissioner of the Social Security Administration on February 14, 2013, replacing Michael Astrue. She has therefore been substituted as the defendant in this case pursuant to Fed. R. Civ. P. 25(d).

Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser*, 557 F.3d at 925. In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court may not reweigh the evidence or try the issues *de novo*. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009).

## II.     The Disputed Issues

In this case, the parties do not dispute that Ms. Brown exhausted her administrative remedies. *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions). Ms. Brown contends that the Administrative Law Judge ("ALJ") erred in formulating a Residual Functional Capacity ("RFC") assessment by underestimating her mental limitations, not finding more restrictions with respect to her upper-left extremity, and viewing her subjective allegations as not entirely credible. Ms. Brown also contends that the ALJ's decision at

step five of the sequential evaluation process is not supported by substantial evidence.

### III.   The Commissioner's Decision

An ALJ must craft an RFC assessment between steps three and four of the five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945; Clarification of Rules Involving [RFC] Assessment, 68 Fed. Reg. 51,153-01, 51155 (Aug. 26, 2003). RFC is defined as "the most [an individual] can still do despite [her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and thus should account for all of an individual's medically determinable impairments, *id*. §§ 404.1545(a)(2), 416.945(a)(2). RFC must be "based on all relevant evidence in [a claimant's] case record" and must encompass both medical and nonmedical evidence. *Id*. §§ 404.1545(a)(1), (3) & (b), 416.945(a)(1), (3) & (b). At the hearing level, the ALJ is responsible for the assessment of RFC. *Id* §§ 404.1527(d)(2)-(3), 416.927(d)(2)(-(3). Claimants bear the burden of demonstrating functional limitations that must be incorporated into RFC. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); *accord Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2002)("[T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant."); *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004).

After considering Ms. Brown's applications, the ALJ determined that Ms. Brown had the following severe impairments—carpal tunnel syndrome, morbid obesity, diabetes mellitus, and major depression and mood disorder secondary to medical condition (Tr. 14). The ALJ found that these severe impairments or combination of impairments did not meet or medically equal one of the listed impairments in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 (Tr. 18).

The ALJ evaluated Ms. Brown's subjective complaints in determining her RFC and found

her claims concerning the intensity, persistence, and limiting effects of her symptoms to not be entirely credible (Tr. 18-21, 25). Thus, the ALJ concluded that Ms. Brown had the following RFC:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). The claimant has the ability to lift and carry 10 pounds occasionally and less than 10 pounds frequently, and sit six hours out of eight hours and stand or walk for 2 hours in an 8 hour day. The claimant should avoid climbing, ladders, ropes or scaffolds and, she is reduced to frequent, but not constant, handling, and fingering on the left. Further, the claimant retains the ability to understand, remember, and carry out short and simple tasks and instructions. She should be limited to occasional public contact and requires occasional coworker or supervisory interaction.

(Tr. 21)

Having determined the RFC, the ALJ must then determine at step four whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The ALJ found that, based upon Ms. Brown's RFC, she was unable to perform past relevant work (Tr. 25). At the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). Here, the ALJ determined that, considering Ms. Brown's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Ms. Brown can perform (Tr. 26). Thus, the ALJ concluded that Ms. Brown was not disabled as defined in the Act (Tr. 25).

**IV.    Analysis**

The record evidence establishes that Ms. Brown was born on November 30, 1987, and was 22 years of age on the asserted disability onset date of December 10, 2009 (Tr. 25).[2] Ms. Brown completed high school and attended one semester of college (Tr. 35, 149). Her employment history

---

[2] Ms. Brown's asserted onset date on both applications is July 23, 2010. During the hearing before the ALJ, this date was amended to December 10, 2009 (Tr. 11).

reflects that she worked as a nursing assistant in a hospital, nursing home, and home health care setting (Tr. 160). Ms. Brown asserts that she is disabled, unable to work, as a result of the following impairments: problems with her nerves and muscles in her left arm and hand, problems with nerves and muscles down to her left foot, a cut artery in her left arm that occurred when she was a child, an infection from a cesarean section, high blood pressure, and headaches. She contends these impairments limit her ability to use her hands, lift, reach, pull, bend, kneel, squat, sit, stand, walk, concentrate, understand, and complete tasks (Tr. 36, 43, 175).

The ALJ determined that Ms. Brown met the insured status requirements of the Act through March 31, 2011, and had not engaged in substantial gainful activity since the alleged onset date of December 10, 2009 (Tr. 13-14).

The Court concludes: (1) substantial evidence supports the ALJ's analysis of Ms. Brown's GAF scores and mental impairment; (2) substantial evidence supports the ALJ's analysis with respect to Ms. Brown's upper-left extremity and her manipulative limitations; (3) the ALJ properly terminated the credibility inquiry at the threshold by finding that Ms. Brown's medically-determinable impairments could not reasonably be expected to produce the symptoms alleged; and (4) substantial evidence supports the ALJ's step-five findings.

**(1)    GAF Scores and Mental Impairment**

Ms. Brown contends the ALJ should have found that she suffered from greater mental limitations based on various Global Assessment of Functioning ("GAF") scores assigned by her medical providers (Dkt. No. 16, at 12-14). The ALJ acknowledged Ms. Brown's low GAF scores, examined the circumstances surrounding those scores, and proffered several permissible reasons for finding that these scores did not prove disability.

A GAF score can be a useful tool because it serves as shorthand for a provider's overall impression of an individual's ability to function. *See Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition ("DSM IV") 27-37 (4th ed. Text revision 2000) (defining GAF scale). The inability "to keep a job" is associated with GAF scores of between 41 and 50, and the inability to work at all is a possible element of GAF scores between 31 and 40. *Id*. The Commissioner, however, has declined to endorse GAF scores in disability analysis and instead conclusively determined that GAF scores have no "direct correlation" to disability adjudication under the regulations. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); *accord Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010)(acknowledging that the Commissioner's refusal to endorse GAF scores for disability purposes is binding upon courts). The Eighth Circuit has acknowledged that prior caselaw placing greater weight upon GAF scores failed to acknowledge the Commissioner's statement in 65 Fed. Reg. 50746. *See Jones*, 619 F.3d at 973-74.

The evidence of record indicates Ms. Brown has had GAF scores over time at various times of 38 to 50. Ms. Brown contends that the ALJ found her subjective complaints concerning the intensity, persistence, and limiting effects of her symptoms to not be entirely credible based in part upon noncompliance with medications prescribed (Tr. 17). Based upon this Court's review of the record, the ALJ did find that a single GAF score from February 2011 was unreliable because Ms. Brown had taken a month-long break from her medications, as part of a deliberate, albeit self-directed, effort to gauge the impact of the medication (Tr. 17). Ms. Brown ultimately resumed her medication and improved (Tr. 17).

The ALJ made his overall observations about Ms. Brown's GAF scores and alleged mental impairment as part of a broader examination of the issues. The record demonstrates the ALJ

6

examined several of Ms. Brown's low GAF scores, examined in detail the circumstances surrounding those scores and other medical evidence of record, cited specific evidence in the record in his analysis, and proffered several permissible reasons for finding that these scores did not prove disability (Tr. 16-17).  Substantial evidence supports the ALJ's findings discounting the probative value of Ms. Brown's GAF scores.

The ALJ also assessed responsive mental limitations by finding that Ms. Brown could only understand, remember, and carry out simple tasks and instructions; be exposed only to occasional contact with the public; and needed occasional coworker or supervisory interaction (Tr. 21).  Those findings are supported by specific evidence cited by the ALJ in his decision (Tr. 14-20).  Substantial evidence supports the ALJ's findings regarding Ms. Brown's mental limitations, and the ALJ made no legal error in reaching his decision on this point.

### (2)     Upper-Left Extremity and Manipulative Limitations

Ms. Brown contends that the ALJ's determination that she is capable of performing sedentary work with frequent handling and fingering is not supported by substantial evidence.  The term "frequent" is defined in Social Security Ruling 83-10 as occurring from one-third to two-thirds of the time.  Ms. Brown maintains the ALJ did not give proper weight or consideration to the diagnosis of two of Ms. Brown's treating physicians and two state agency medical consultants when reaching his decisions regarding her upper-left extremity and manipulative limitations (Dkt. No. 16, at 14).

The ALJ found that Ms. Brown's carpal tunnel syndrome constituted a severe impairment, which in turn limited her to "frequent, but not constant, handling and fingering on the left" (Tr. 21, 24).  In so doing, the ALJ relied upon a November 10, 2010, note from Charles Clark, M.D., a

treating physician, in which he recorded that Ms. Brown no longer experienced "any numbness, tingling, or complaints of nighttime discomfort" (Tr. 424). At that time, Ms. Brown's "only complaint [was] the pain at the A1 pulley of the ring finger," which was "not near as bad as it was," and only "bother[ed] her from time to time when she pull[ed] on things, especially at work" (Tr. 424). In response, Dr. Clark restricted Ms. Brown to light duty work (Tr. 424). The ALJ accounted for the records of Dr. Clark and those of Ghulam M. Khaleel, M.D., a treating specialist, when determining that Ms. Brown experienced a manipulative impairment (Tr. 14, 21, 24).

The dispute at this stage centers around the extent to which that manipulative impairment hindered Ms. Brown's ability to work. *See Gregg v. Barnhart*, 354 F.3d 710, 713-14 (8th Cir. 2003) ("The crucial question is not whether [the claimant] experienced [a symptom], but whether [his] subjective complaints prevent him from performing any type of work.") Ms. Brown challenges the ALJ's treatment of Dr. Clark's determination and the determination of the state agency physician, Sharon Keith, M.D. Dr. Clark restricted Ms. Brown to light work, with no special manipulative limitations (Tr. 424). The ALJ specifically observed that there were "no further indications in the record that Dr. Clark. . . increased or decreased the claimant's restrictions on basic work activities." (Tr. 15). *Robson v. Astrue*, 526 F.3d 389, 392-93 (8th Cir. 2008); *Stormo*, 377 F.3d at 805; *Vossen*, 612 F.3d at 1016. Dr. Keith opined that Ms. Brown should avoid "rapid/repetitive flex/extension of [her left upper extremity]." (Tr. 373). A second state medical consultant, Dr. Norcross, M.D., reviewed all of the evidence in Ms. Brown's file and affirmed Dr. Keith's findings in his report dated December 22, 2010 (Tr. 425-29).

The ALJ concurred with Dr. Keith that Ms. Brown had handling and fingering limitations (Tr. 21, 24). The ALJ, however, accorded Dr. Keith's assessment "limited" weight (Tr. 24). As

evidenced by the record, Dr. Clark saw no need for such limitations. A treating physician's opinion ordinarily outweighs other opinion evidence, unless the treating physician's opinion is inconsistent with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c); *accord Martise v. Astrue*, 641 F.3d 909, 924-25 ( 8th Cir. 2011). The Commissioner's regulations call for "more weight" for an opinion from a treating physician than a non-treating physician because those "sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2) (DIB); 20 C.F.R. § 416.927(d)(2) (SSI). The regulations direct the ALJ to give a treating-source opinion controlling weight so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2) (DIB); 20 C.F.R. § 416.927(d)(2) (SSI). If the ALJ does not give a treating source opinion controlling weight, the ALJ must provide good reasons for not doing so. *See* 20 C.F.R. § 404.1527(c)(2) (DIB); 20 C.F.R. § 416.927(d)(2) (SSI).

The ALJ's decision regarding Ms. Brown's upper-left extremity and manipulative limitations gave controlling weight to Dr. Clark's determination and is supported by substantial evidence. The ALJ made no legal error when reaching his decision on this point.

### (3) The Credibility Inquiry

In the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort or other disabling limitations simply because there is a lack of objective evidence; instead the ALJ may only discredit subjective complaints "if they are inconsistent with the record

9

as a whole." *See Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. Cir. 1994); *see also Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Ms. Brown contends that substantial evidence supports her subjective allegations regarding the intensity, persistence, and limiting effects of her symptoms and that the ALJ improperly discounted her subjective allegations of pain based upon her refusal to pursue surgical intervention for her hand impairments as well as morbid obesity (Tr. 14-15, 22).

The ALJ determined that Ms. Brown's medically-determinable impairments could not reasonably be expected to produce the symptoms alleged (Tr. 23-24). The ALJ made specific findings explaining his conclusion (Tr. 24). *See Baker v. Secretary of Health and Human Services*, 955 F.2d 552, 555 (8th Cir. 1992). A finding that a medically-determinable impairment could not reasonably be expected to produce the alleged symptoms is a condition precedent to the credibility inquiry that Ms. Brown faults the ALJ for not having performed. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96-7p, 1996 WL 374186, at *2-3; *see also Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (recognizing that the ALJ need only consider symptoms that could reasonably be produced by established medically-determinable impairment). The Eighth Circuit has specifically acknowledged the Commissioner's two-step inquiry, as set forth in SSR 96-7p. *Wiese v. Astrue*, 552 F.3d 728, 734 (8th Cir. 2009) (citing SSR 96-7, *supra*, at *2-3).

The ALJ made no legal error when conducting the credibility inquiry, and substantial evidence supports the ALJ's determination on this point.

### (4) Substantial Evidence Supports Step Five Findings

If a claimant demonstrates that he cannot perform his past relevant work, the Commissioner

bears the burden of proving that his functional capacity, age, education, and work experience allow him to perform other work in the national economy. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Ms. Brown asserts that the Commissioner erred in its determination at step five.

At step five, the Commissioner carries the limited burden of producing evidence showing that, given the claimant's previously-determined RFC, there are a significant number of jobs in the national economy that the claimant remains able to perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c); *accord Goff*, 421 F.3d at 789-90. An ALJ may meet this burden by obtaining testimony from a Vocational Expert ("VE") regarding the impact of a claimant's limitations upon his or her ability to perform work. 20 C.F.R. §§ 404.1566(e) 416.966(e); *Goff*, 421 F.3d at 789-90. A VE's testimony that a claimant can perform jobs that exist in significant numbers in the national economy constitutes substantial evidence to support a step-five finding that a claimant is not disabled if it is offered in response to a hypothetical question that sets forth a proper RFC. *Martise*, 641 F.3d at 927; *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006); *Goff*, 421 F.3d at 794. Thus, the hypothetical need not incorporate any limitations the ALJ permissibly rejects. *Martise*, 641 F.3d at 927.

The ALJ found that plaintiff could perform the work associated with jobs that exist in the national economy based on VE testimony solicited in response to a hypothetical question that set forth the RFC ultimately assessed by the ALJ (Tr. 24, 26, 44-45). Plaintiff does not fault the ALJ's intrinsic step-five reasoning nor the VE's testimony but rather attacks the step-five finding solely based on her contention that her manipulative limitations were, in fact, more incapacitating than the ALJ previously found. She contends the ALJ failed to take her manipulative limitations into account in his determination that she could perform sedentary work in the hypothetical he posed to the VE.

11

Because this Court determines that the ALJ's RFC assessment is supported by substantial evidence, this Court affirms the ALJ's step-five finding that plaintiff could perform other work and thus was not disabled. *Martise*, 641 F.3d at 927. Substantial evidence supports the ALJ's determination, and the ALJ made no legal error in reaching his conclusion on this point.

**V.     Conclusion**

Having determined substantial evidence supports the Commissioner's denial of Ms. Brown's applications for disability benefits, and the Commissioner made no legal error, the Court DENIES Ms. Brown's request for relief and AFFIRMS the Commissioner's decision.

IT IS SO ORDERED this 27th day of March, 2013.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE